1
2
3
4
5                           **UNITED STATES DISTRICT COURT**

6                              **DISTRICT OF NEVADA**

7

8    SAMUEL RUDOLPHO,

9         Petitioner,                              2:12-cv-00876-APG-NJK

10   vs.
                                                   **ORDER**
11   D.W. NEVEN, *et al.*,

12        Respondents.

13   _____/

14

15   Introduction

16        This habeas corpus action is brought by Samuel Rudolpho, a Nevada prisoner.  Rudolpho's

17   habeas corpus petition is before the court with regard to the merits of his remaining claims.  The

18   court will deny the petition, and will deny Rudolpho a certificate of appealability.

19   Procedural History and Factual Background

20        Rudolpho was convicted in Nevada's Eighth Judicial District Court, after a jury trial, of

21   one count of burglary, one count of grand larceny, and one count of possession of stolen property.

22   *See* Judgment of Conviction, Exhibit 24 (The exhibits referenced in this order were filed by

23   respondents and are found in the record at ECF No. 11.).  He was adjudicated an habitual criminal,

24   and sentenced to three consecutive five to fifteen year prison terms.  *See id*.  The original judgment

25   of conviction was filed on August 13, 2008.  *See id*.

26

1    Rudolpho appealed, and the Nevada Supreme Court affirmed in part and reversed in part.

2    *See* Order Affirming in Part and Reversing in Part, Exhibit 32.  On March 1, 2010, the Nevada

3    Supreme Court affirmed Rudolpho's convictions for burglary and grand larceny, but reversed his

4    conviction for possession of stolen property.  *See id.*  Rudolpho filed a petition for rehearing, and

5    the Nevada Supreme Court denied that petition on May 26, 2010.  *See* Petition for Rehearing,

6    Exhibit 33; Order Denying Rehearing, Exhibit 34.  On September 22, 2010, the Nevada Supreme

7    Court denied en banc reconsideration.  *See* Order Denying En Banc Reconsideration, Exhibit 36.

8    The remittitur issued on October 18, 2010.  *See* Remittitur, Exhibit 37.

9    An amended judgment of conviction was filed on June 9, 2010, reflecting that the conviction

10   for possession of stolen property was stricken.  *See* Amended Judgment of Conviction, Exhibit 38.

11   The amendment of the judgment of conviction left Rudolpho to serve two consecutive five to fifteen

12   year prison sentences, upon convictions of burglary and grand larceny and upon his adjudication as

13   an habitual criminal.

14   Rudolpho then filed,  in the state district court, a *pro se* post-conviction petition for writ of

15   habeas corpus.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 39.  The state

16   district court denied relief in a written order entered on October 7, 2010.  *See* Findings of Fact,

17   Conclusions of Law and Order, Exhibit 47.  Rudolpho appealed, and the Nevada Supreme Court

18   affirmed on November 17, 2011.  *See* Order of Affirmance, Exhibit 49.  The Nevada Supreme Court

19   denied Rudolpho's petitions for rehearing and en banc reconsideration.  *See* Order Denying

20   Rehearing, Exhibit 51; Order Denying En Banc Reconsideration, Exhibit 53.  The remittitur issued

21   on May 14, 2012.  *See* Remittitur, Exhibit 54.

22   This court received Rudolpho's *pro se* federal petition for writ of habeas corpus, initiating

23   this action, on May 23, 2012.  *See* Petition for Writ of Habeas Corpus (ECF No. 6).  Rudolpho's

24   petition includes three grounds for relief.  Ground 1 includes 10 subparts, designated by roman

25   numerals I through X.  Ground 2 includes 10 subparts, designated by letters A through J.  Ground

26   2(H) has five numbered subparts.

On July 20, 2012, the court screened Rudolpho's habeas petition, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, and dismissed Grounds 1(II), 1(VIII), 2(A), 2(B), 2(C), 2(D), 2(E), 2(F), 2(G), 2(H)(1), 2(H)(2), 2(H)(3), 2(I), and 3. *See* Order entered July 20, 2012 (ECF No. 5).

On November 5, 2012, respondents filed a motion to dismiss, seeking dismissal of additional claims from Rudolpho's petition. *See* Motion to Dismiss (ECF No. 11). On November 15, 2012, Rudolpho filed a notice of non-opposition to that motion. *See* Notice of Non-Opposition and Request for Relief (ECF No. 15). On January 7, 2013, the court granted respondents' motion to dismiss. *See* Order entered January 7, 2013 (ECF No. 18). In that order, the court dismissed Grounds 1(III) and 2(H)(4), and Ground 1(X) to the extent that it asserts a claim of cumulative error due to ineffective assistance of counsel. *See id.*

The respondents then filed an answer (ECF No. 19), responding to the remaining claims in Rudolpho' habeas petition, and Rudolpho filed a reply (ECF No. 20).

Rudolpho's petition is now before the court with respect to the merits of his remaining claims, which are Grounds 1(I), 1(IV), 1(V), 1(VI), 1(VII), 1(IX), 1(X) (in part), 2(H)(5), and 2(J).

Standard of Review

The standard of review in this federal habeas action is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the primary standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1    A state court decision is contrary to clearly established Supreme Court precedent, within the

2    meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

3    forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

4    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

5    different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

6    (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685,

7    694 (2002)).

8    A state court decision is an unreasonable application of clearly established Supreme Court

9    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

10   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

11   principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S.

12   at 413). The "unreasonable application" clause requires the state court decision to be more than

13   incorrect or erroneous; the state court's application of clearly established law must be objectively

14   unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

15   The Supreme Court has further instructed that "[a] state court's determination that a claim

16   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

17   correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing

18   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even

19   a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*.

20   (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398

21   (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for

22   evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

23   doubt" (internal quotation marks and citations omitted)).

24   The state court's "last reasoned decision" is the ruling subject to section 2254(d) review.

25   *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). If the last reasoned state-court decision

26   adopts or substantially incorporates the reasoning from a previous state-court decision, a federal

1   habeas court may consider both decisions to ascertain the state court's reasoning.  *See Edwards v.*

2   *Lamarque*, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

3       A state court ruling denying a claim without explanation is still entitled to AEDPA

4   deference.  *Harrington*, 562 U.S. at 98-100.  In *Harrington*, the Supreme Court held that

5   "determining whether a state court's decision resulted from an unreasonable legal or factual

6   conclusion does not require that there be an opinion from the state court explaining the state court's

7   reasoning."  *Id*. at 98.  The Court explained that where there is no explanation from the state court,

8   "the habeas petitioner's burden still must be met by showing that there was no reasonable basis for

9   the state court to deny relief."  *Id*.

10  Analysis

11      Ground 1(I)

12      In Ground 1(I) of Rudolpho's habeas corpus petition, he claims that his federal constitutional

13  rights were violated because there was insufficient evidence to support the jury verdict.  *See* Petition

14  for Writ of Habeas Corpus (ECF No. 6), pp. 3-3f.  Rudolpho claims that there was insufficient

15  evidence showing that he committed the crimes, and that there was insufficient evidence showing

16  that the stolen property had a value over $250, to support the grand larceny conviction.  *See id*.

17      In a federal habeas corpus action, a petitioner may challenge the sufficiency of the evidence

18  underlying a conviction in state court, on the ground that the conviction violates his rights under the

19  Due Process Clause of the Fourteenth Amendment.  *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).

20  However, the federal habeas court's inquiry regarding the sufficiency of evidence is limited.  The

21  evidence supporting a conviction is not unconstitutionally insufficient unless the conviction was "so

22  totally devoid of evidentiary support as to render [the petitioner's] conviction unconstitutional under

23  the Due Process Clause of the Fourteenth Amendment."  *Fish v. Cardwell*, 523 F.2d 976, 978 (9th

24  Cir.1975) (internal quotation marks and citations omitted).  The standard of review on a sufficiency

25  of evidence claim is whether "after viewing the evidence in the light most favorable to the

26  prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir.2008).  This court, in this federal habeas corpus action, is not to re-weigh the evidence to reach a result different from that of the jury.  *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995) ("The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."). Circumstantial evidence alone is sufficient to support a conviction.  *See Jackson*, 443 U.S. at 324-25; *Schad v. Ryan*, 671 F.3d 708, 717 (9th Cir.2011) ("Circumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction.").

On federal habeas review, under AEDPA, the court applies the *Jackson* standard with an "additional layer of deference" to the state court's decision, and may only overturn the conviction if the state court's decision constituted an "objectively unreasonable application" of *Jackson*.  *See Juan H. v. Allen*, 408 F.3d 1262, 1274 and n.12 (9th Cir.2005).  In short, in a federal habeas corpus action, "the only question under *Jackson* is whether th[e] [jury] finding was so insupportable as to fall below the threshold of bare rationality."  *Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2065 (2012).

On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied Rudolpho's claims of insufficient evidence, without discussion.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32, p. 2 n.1.

In 2007, Rudolopho was a maintenance worker at an apartment complex for senior citizens in

Las Vegas; he was charged with stealing collectible dolls, china, and other property, from the apartment of Edward J. Milker, an elderly tenant at the complex, who had been in Denver with his son, recovering from a surgery, when the thefts occurred.  As a maintenance worker at the apartment complex, Rudolpho had access to a key to Milker's apartment.  *See* Testimony of Monica Schurtz, Transcript of Trial, June 17, 2008, Exhibit 16, pp. 8-10, 28.

1    Audrey Losardo, a tenant at the apartment complex, testified that she saw Rudolopho go into

2    Milker's apartment several times with a dolly and flattened empty boxes, and saw him come out

3    with the boxes "filled up."  Testimony of Audrey Losardo, Transcript of Trial, June 17, 2008,

4    Exhibit 16, pp. 104, 128-29.  Losardo testified that she asked Rudolpho why he was going in

5    Milker's apartment, and Rudolpho told her that he was packing up Milker's belongings, because

6    Milker was not returning to his apartment and had given him everything in it.  *Id*. at 104-05.

7    There was evidence that Rudolpho sold three of Milker's collectible dolls to another tenant at

8    the complex, Peggy Parks.  Testimony of Peggy Parks, Transcript of Trial, June 17, 2008, Exhibit

9    16, pp. 137-39; *see also* Testimony of Officer Alan Dong, Transcript of Trial, June 17, 2008, Exhibit

10   16, pp. 48-49.  There was also evidence that Rudolpho tried to sell Parks another doll, and other

11   items, including a crystal dish or plate.  *See* Testimony of Peggy Parks, Transcript of Trial, June 17,

12   2008, Exhibit 16, pp. 139-40.

13   There was evidence that Rudolpho sold some 33 of Milker's dolls, as well as china and other

14   items, to Losardo.  Testimony of Audrey Losardo, Transcript of Trial, June 17, 2008, Exhibit 16, pp.

15   96-106; *see also* Testimony of Officer Alan Dong, Transcript of Trial, June 17, 2008, Exhibit 16, pp.

16   41-43, 60-61; Testimony of Edward J. Milker, Transcript of Trial, June 17, 2008, Exhibit 16, pp.

17   158-60.  Losardo testified that when she asked Rudolpho where he obtained the dolls, he said

18   "people had moved out, left things behind, and he was cleaning the apartments and he was -- you

19   know, that was left."  Testimony of Audrey Losardo, Transcript of Trial, June 17, 2008, Exhibit 16,

20   p. 101; *see also id*. at 124.

21   There was ample evidence presented at trial showing that Rudolpho committed the burglary

22   and grand larceny.

23   Regarding the value of the property stolen from Milker's apartment, the police officer who

24   investigated the theft, Officer Alan Dong, testified as follows:

25        Q.     ... Did Mr. Milker also give you a value of some of these items?

26        A.     Yes, sir.

Q.    Do you recall some of the values?

A.    $100, $25, just -- there's numerous pieces of items that he tried to give me dollar amounts.

Q.    Would you say that in total those items totaled more than $250?

A.    Yes.  I believe I totaled them up to be about $3300.

Q.    $3300?

A.    Yes sir.

Testimony of Officer Alan Dong, Transcript of Trial, June 17, 2008, Exhibit 16, p. 48.

Milker testified that he estimated that over 150 collectible dolls in their original boxes were stolen from his apartment.  *See* Testimony of Edward J. Milker, Transcript of Trial, June 17, 2008, Exhibit 16, pp. 166-67.  Milker testified that other items stolen from the apartment included magazines dating back to the 1950's, four sets of Sango china in original boxes, Haviland china from the 1890's (service for eight, plus serving pieces), 45 purses, three hats, jackets, a bathrobe, shirts, trousers, and sheets and comforters in original packaging.  *See id*. at 167-68.

Milker testified further as follows:

Q.  Not that you would, but those group -- the dolls that I showed you --

A.  Yes.

Q.  -- if you were going to sell them, how much would you ask for?

A.  Well, I estimated -- at the time about $3300.

Testimony of Edward J. Milker, Transcript of Trial, June 17, 2008, Exhibit 16, p. 160.

Ed Milker (Edward J. Milker's son) testified that, at an antique show in Denver, he saw that Haviland china was being sold for $35 to $50 for one cup and one saucer.  *See* Testimony of Ed Milker, Transcript of Trial, June 17, 2008, Exhibit 16, p. 176.

Losardo paid Rudolpho $550 for some 33 dolls, and china and various other items taken from Milker's apartment.  *See* Testimony of Audrey Losardo, Transcript of Trial, June 17, 2008, Exhibit 16, pp. 101, 129-30.  Losardo, a doll collector, testified that she believed she received a good deal.  *See id*. at 101.  Parks paid Rudolpho $25 each for the three dolls that she bought from him.

8

1   *See*

2 Testimony of Peggy Parks, Transcript of Trial, June 17, 2008, Exhibit 16, pp. 137-39.

3       There was ample evidence to support the jury's finding that the property Rudolpho took from

4 Milker's apartment was worth more than $250.

5       The court, therefore, determines that the state court's denial of the claim asserted by

6 Rudolpho as Ground 1(I) was not contrary to, or an unreasonable application of, clearly established

7 federal law, as determined by the Supreme Court of the United States, and the state court's ruling

8 was not based on an unreasonable determination of the facts in light of the evidence presented. *See*

9 28 U.S.C. § 2254(d). Rudolpho does not show habeas relief corpus to be warranted. The court will

10 deny habeas corpus relief with respect to this claim.

11     Ground 1(IV)

12       In Ground 1(IV), Rudolpho claims that his federal constitutional rights were violated because

13 "[t]he Information fails to state essential facts constituting the offense charged...." Petition for Writ

14 of Habeas Corpus, pp. 3i-3k. Rudolpho claims that the information did not sufficiently specify, with

15 respect to the grand larceny charge concerning the Milker property, the property that he was accused

16 of stealing. *See id*.

17       The Sixth Amendment guarantees a criminal defendant the right to be informed of the nature

18 and cause of the charges made against him so as to permit adequate preparation of a defense. *See*

19 *In re Oliver*, 333 U.S. 257, 273 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Gautt v. Lewis*,

20 489 F.3d 993, 1002 (9th Cir.2007).

21       On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied this claim

22 without discussion. *See* Order Affirming in Part and Reversing in Part, Exhibit 32, p. 2 n.1.

23       In this case, the information alleged, with respect to the grand larceny charge concerning the

24 Milker property, that Rudolpho "did, on or between June 1, 2007, and October 15, 2007, then and

25 there wilfully, unlawfully, and feloniously with intent to deprive the owner permanently thereof,

26 steal, take, carry, lead or drive away property owned by Edward Milker, having a value of $250,00,

1   or more, to-wit:  dolls, china and other items." Information, Exhibit 4, p. 2.  The court finds that this

2   language in the information satisfied the federal constitutional notice requirement with regard to the

3   property that Rudolpho was charged with stealing from Milker.

4

5   Therefore, this court concludes that the state court's denial of this claim was not contrary to,

6   or an unreasonable application of, clearly established federal law, as determined by the Supreme

7   Court of the United States, and the state court's ruling was not based on an unreasonable

8   determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho

9   does not show habeas relief to be warranted.  The court will deny habeas corpus relief with respect

10  to this claim.

11      Ground I(V)

12      In Ground 1(V), Rudolpho claims that his federal constitutional rights were violated on

13  account of prosecutorial misconduct.  *See* Petition for Writ of Habeas Corpus, pp. 3k-3n.  Rudolpho

14  claims that "[t]he state misstated the evidence," "shifted the burden of proof," "disparaged the

15  defense case," "vouched for state witnesses and referenced facts not in evidence."  *See id.*

16      Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of

17  whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181

18  (1986).  To prevail on such a claim, the habeas petitioner must show that the prosecutor's conduct

19  "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

20  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Moreover, "[o]n habeas review,

21  constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if

22  they 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Wood v.*

23  *Ryan*, 693 F.3d 1104, 1113 (9th Cir.2012) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38

24  (1993)).

25      On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied this claim

26  without discussion.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32, p. 2 n.1.

1        Rudolopho first complains of an alleged misstatement of the evidence in the prosecution's

2  closing argument.  Rudolpho claims that the prosecutor misstated the evidence in arguing that

3  witness Constance Yauger described Rudolpho as looking nervous when she saw him leaving

4  Losardo's apartment.  *See* Petition for Writ of Habeas Corpus, pp. 3k-3l; *see also* Transcript of Trial,

5  Closing Arguments, June 19, 2008, Exhibit 19, pp. 5-6; Testimony of Constance Yauger, Transcript

6  of Trial, June 17, 2008, Exhibit 16, pp. 142-48.  This evidence, however, is related to the alleged

7  theft of property from Losardo.  Yauger's testimony had no bearing on the evidence regarding the

8  theft from Milker.  Rudolpho was acquitted of the charges related to the alleged theft from Losardo.

9  Therefore, this court finds that the prosecutorial misconduct complained of here did not have

10  substantial and injurious effect or influence in determining the jury's verdict with regard to the

11  convictions that Rudolpho challenges.

12        Next, Rudolpho complains of another alleged misstatement of the evidence by the prosecutor

13  in his rebuttal closing argument.  Rudolpho claims that the prosecutor misstated the evidence in

14  arguing, based on Losardo's testimony, that Rudolpho misled Losardo by saying that he was waiting

15  for parts to fix her closet door.  *See* Petition for Writ of Habeas Corpus, p. 3l; *see also* Transcript of

16  Trial, Closing Arguments, June 19, 2008, Exhibit 19, pp. 35, 37-38; Testimony of Audrey Losardo,

17  Transcript of Trial, June 17, 2008, Exhibit 16, pp. 93-135.  Here again, however, this evidence

18  related only to the alleged theft from Losardo, and had nothing to do with the theft from Milker.

19  This alleged prosecutorial misconduct did not have substantial and injurious effect or influence in

20  determining the jury's verdict with regard to the convictions that Rudolpho challenges.

21        Rudolpho's third claim of prosecutorial misconduct is a claim that the prosecutor improperly

22  shifted the burden of proof, by arguing, in his rebuttal closing argument, that "[t]here's no evidence

23  that the Defendant was informed about the theft prior to that meeting."  *See* Petition for Writ of

24  Habeas Corpus, p. 3l; *see also* Transcript of Trial, Closing Arguments, June 19, 2008, Exhibit 19, p.

25  33.  This argument, too, related only to the alleged theft from Losardo.  The gist of the prosecutor's

26  argument was that Rudolpho somehow knew of the theft from Losardo before the apartment

1   complex manager told him about that theft.  *See* Transcript of Trial, Closing Arguments, June 19,

2   2008, Exhibit 19, p. 33.  But, again, this argument related only to the alleged theft from Losardo, and

3   had nothing to do with the theft from Milker.  This alleged prosecutorial misconduct, then, did not

4   have substantial and injurious effect or influence in determining the jury's verdict with regard to the

5   convictions that Rudolpho challenges.

6          Next, Rudolpho complains of the following argument by the prosecution in his rebuttal

7   closing argument:

8          Okay now let's talk about -- they said: Well there's no corroboration.  No
           corroboration about this jewelry.  Well that's not true, is it?  We have the Defendant
9          pawning the jewelry, then ... Connie [Yauger] remembers when Frank [Losardo's
           husband] was alive.  She remembers that Frank used to wear the confirmation ring on
10         his finger.  She remembers that.  Okay so it's not just Connie it's -- I mean it's not
           just Audrey [Losardo], it's Audrey and Connie too.

11
           The Defendant would have you believe, or Maria [defense counsel] would
12         have you believe that somehow this is a big conspiracy that all these old folks are just
           trying to railroad the Defendant.  That's -- I mean is that reasonable to believe that?
13         Think about that.  I mean the Defendant used to go over to the house when Frank was
           alive.  Frank -- they elicited this testimony by the way.  Frank thought of him as a
14         son, but yet these old ladies are all going to get together and try to railroad the
           Defendant.  They're going to pretend the jewelry is [theirs] when it's really not.
15         Does that make any sense?  Of course not.

16         Then they want you to believe that Milken -- Milker rather -- he's what 85?
           He drove in from Colorado.  He's in the wheelchair, right?  He had to come twice for
17         this case, right?  Because you heard about the preliminary hearing.  That Milker, you
           know, is getting up here and he's going to say all those dolls are mine when they're
18         not.  He's just going to -- he's going to say that they're all mine.  He's going to
           remember when he bought it for his wife in Salt Lake City.  He's going to remember
19         the three-foot Barbie doll that walks along with you that has all the cables, he's going
           to remember that?  That he's just going to claim that all that stuff is his when it's not.
20         The first black Barbie from the 60's, right.  The Humpty Dumpty one.  He was up
           there going yep, yep; and when Humpty Dumpty he said egghead.

21
           You know you can't put a value on that kind of testimony.  I mean obviously
22         he's remembering these specific items.  These are unique items.  The Defendant
           didn't just find these, okay.  He stole them.  They're specific.  They were his, they're
23         not the Defendant's.  But according to the defense it's all a conspiracy.  Everybody's
           getting together.  Even the pawn people are getting together too.  They're going to try
24         to railroad this guy.  Think about it.

25   Transcript of Trial, Closing Arguments, June 19, 2008, Exhibit 19, pp. 27-28; *see also* Petition for

26   Writ of Habeas Corpus, pp. 3l-3m.  Rudolpho contends that this argument unfairly disparaged the

12

1    defense.  *See* Petition for Writ of Habeas Corpus, pp. 3l-3m.  The court, however, finds that the point

2    of the prosecutor's argument was proper -- he was properly rebutting defense argument that the

3    testimony of certain witnesses was untrue, arguing that it was unbelievable that all those witnesses

4    would testify falsely.  Certainly, in this court's view, the argument was not such as to infect the trial

5    with unfairness so as to make the resulting conviction a denial of due process.  Moreover, this

6    argument by the prosecution did not have had a substantial and injurious effect or influence in

7    determining the jury's verdict.

8           Rudolpho also complains of the following argument made by the prosecutor in his rebuttal

9    closing argument:

10                 Then Maria [defense counsel] says well [Officer] Dong, you know, Dong did
               a bad job.  Well you know what, Dong's a patrol guy.  He's a patrol guy and you're
11             asked to use your common sense.  You know about the crime rate we have.  Our
               city's growing.  It's out of control.  I mean these guys are -- they're overwhelmed
12             you know, so use your common sense.

13   Transcript of Trial, Closing Arguments, June 19, 2008, Exhibit 19, pp. 28-29; *see also* Petition for

14   Writ of Habeas Corpus, pp. 3m-3n.  Rudolpho claims that this argument improperly vouched for the

15   witness -- Officer Dong -- and referenced facts not in evidence.  *See* Petition for Writ of Habeas

16   Corpus, pp. 3m-3n.  The court finds that this argument was not improper vouching for a witness.

17   The argument did reference facts not in evidence, but, essentially, that was simply reference to the

18   not-surprising fact that patrol officers in Las Vegas are busy.  The argument certainly did not infect

19   the trial with unfairness so as to make the resulting conviction a denial of due process, and it did not

20   have a substantial and injurious effect or influence in determining the jury's verdict.

21          The court concludes that the state court's denial of the claims asserted by Rudolpho as

22   Ground 1(V) of his habeas petition was not contrary to, or an unreasonable application of, clearly

23   established federal law, as determined by the Supreme Court of the United States, and the state

24   court's ruling was not based on an unreasonable determination of the facts in light of the evidence

25   presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho does not show habeas relief to be warranted.  The

26   court will deny habeas corpus relief with respect to this claim.

1    Ground 1(VI)

2          In Ground 1(VI), Rudolpho claims that his federal constitutional rights were violated when

3    the trial court denied his challenge of a juror for cause.  *See* Petition for Writ of Habeas Corpus, pp.

4    3n-3o.

5

6          The following exchange, involving "Prospective Juror No. 102," occurred, during jury

7    selection:

8          Ms. Cleveland (defense counsel):  ... first question I'm going to ask you is do
      any of you sitting here believe, you know, the fact that Sam Rudolopho is here, as a
9     Defendant, that he's charged, been charged by the State with -- and we heard what
      those charges are, counts of burglary, grand larceny, that there's probably the
10    likelihood that he's guilty of something.

11         Anybody on some level feel that way?

12                                    *    *    *

13         The Court:  102.

14         Ms. Cleveland:  -- 102 can you just explain to me a little about where you're
      coming from then?
15
           Prospective Juror No. 102:  Well, I believe if you got caught in a crime, most
16    likely you were doing a crime.

17         Ms. Cleveland:  So you believe that just by someone here in the courtroom at
      this stage being accused of the crime, that it's more than likely that he or she would
18    be guilty?

19         Prospective Juror 102:  Yes.

20         Ms. Cleveland:  I guess, Your Honor, I would at this point challenge for
      cause.
21
           Mr. Schifalacqua (prosecutor):  Can I ask him a couple of questions?
22
           The Court:  Yes, absolutely.
23
           Mr. Schifalacqua:  Sir, at this point you haven't heard any evidence, right?
24
           Prospective Juror 102: No, I have not.
25
           Mr. Schifalacqua:  Okay.  I just told you what the charges is, that's it.
26    Correct?

1                Prospective Juror 102:  Correct.

2                Mr. Schifalacqua: Okay.  I mean right now he's presumed innocent.  Do you understand that?  That's in the constitution.

3                Prospective Juror 102:  Correct.

4                Mr. Schifalacqua: Okay.  Are you okay with that?  AS of now he's presumed innocent until we prove him otherwise, are you okay with that?

5

6                Prospective Juror 102:  Yeah.  Yeah.  I mean, yah, I'll accept it but I don't -- I mean you wouldn't be here if you weren't --

7

8                Mr. Schifalacqua:  Well, that's not necessarily true, right?  I mean everyone is entitled to a trial, right?  And that's just part of the constitution.  So we're going to go through this process and you'll see if he did it or he didn't do it.  Are you okay doing that?  Waiting to see the evidence, 'cause right now you don't know.

9

10               Prospective Juror 102:  I'd be -- I'm not real familiar with it, so I --

11               The Court: Wait, Mr. Schifalacqua, one moment.

12               All right.  102 listen, let me explain how it works, and it works the same for everybody who comes in here that's charged with a crime.

13

14               If you were chosen, in a few minutes after we got through with the selection process I would read to you some opening remarks about how a trial works.  And I would look at all of you and say, as the defendant sits here now he is not guilty.  The State of Nevada, meaning those two gentlemen over there [indicating], have the burden of proving each fo the essential elements of the crimes that he's been charged beyond a reasonable doubt.

15

16

17               So right now, right now, Mr. Rudolpho sitting right there [indicating], he's not guilty.  And so when Miss Cleveland asks you, you know, do you think something -- well listen, something must have happened that caused us to be here today.  I don't know what it is 'cause I haven't heard anything.  But if you -- if we had to vote today, right now -- right now, at this moment, and four minutes after 3 o'clock in the afternoon, would you be able to vote on anything having to do with Mr. Rudolpho?

18

19

20

21               Prospective Juror 102: No.

22               The Court:  And that's because why?

23               Prospective Juror 102:  'Cause I haven't heard any evidence.

24               The Court:  Yes.  You haven't heard any evidence; excellent, you've been listening.  So you understand at this point he's not guilty, right?

25

26               Prospective Juror 102: Yes.

15

1          The Court:  So go ahead.

2    Transcript of Jury Selection, Exhibit 14, pp. 75-78.

3          Prospective Juror 102 was not removed for cause; the defense, however, used a peremptory

4    challenge to strike Prospective Juror 102 from the jury.  *See id*. at 87.  Prospective Juror 102,

5    therefore, did not sit on the jury at Rudolpho's trial.

6

7          On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied this claim

8    without discussion.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32, p. 2 n.1.

9          The Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge

10   constitutes a violation of the constitutional right to an impartial jury."  *Ross v. Oklahoma*, 487 U.S.

11   81, 88 (1988).  So long as the impaneled jury is not biased, "the fact that the defendant had to use a

12   peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  *Id*.

13   Rudolpho does not argue that his loss of a peremptory challenge resulted in a biased jury.  *See*

14   Petition for Writ of Habeas Corpus, pp. 3n-3o.

15         The Nevada Supreme Court's summary rejection of this claim was not contrary to, or an

16   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

17   the United States, and the state court's ruling was not based on an unreasonable determination of the

18   facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho does not show habeas

19   relief to be warranted.  The court will deny habeas corpus relief with respect to this claim.

20         <u>Ground 1(VII)</u>

21         In Ground 1(VII), Rudolpho claims that the trial court "exhibited manifest bias against the

22   defense and violated [his] due process and fair trial rights under the [federal constitution]."  *See*

23   Petition for Writ of Habeas Corpus, pp. 3o-3p.

24         During defense counsel's cross-examination of Officer Dong, the following exchange

25   occurred:

26              Q.  [by defense counsel, Ms. Cleveland]  Well, Officer Dong, did you
                understand that Ms. Losardo was claiming the jewelry had been taken?

1          A.  Not at that -- not specifically.

2          Q.  Well, at some point -- at some point, did you become aware --

3          The Court:  Ms. Cleveland, is there some reason for you to have to get upset with the officer who's just trying to answer the question?

4

5          Ms. Cleveland:  Because, Your Honor, based on his previous testimony, I guess I'm a little frustrated by his answers.  he already talked to us about how he showed her photos of jewelry.

6

7          The Court: Okay.  Well, yeah, I mean, obviously there's -- we already had testimony previously in the trial from the lady who managed the apartments.  So we know about that.

8

9          Ms. Cleveland:  Well, I'm more interested in Officer Dong's steps and --

10          The Court:  Okay.  But I guess what I'm not appreciating so much is I don't get a reason why you should be so frustrated at -- yet, at this point.  So, if you could just ask him the question --

11

12          Ms. Cleveland:  Okay.

13          The Court: -- I'm sure he'll do his best to answer and if there's impeachment, you impeach him, but just -- go ahead.

14          By Ms. Cleveland: So, Officer Dong, when did you become aware that jewelry was at issue with regard to Ms. Losardo?

15

16  Transcript of Trial, June 17, 2008, Exhibit 16, pp. 52-53.  And, during defense counsel's cross-

17  examination of Losardo, the following exchange occurred:

18          Q.  [by defense counsel, Ms. Cleveland]  And so this letter was provided to Monica Schurtz 21 days, is it, after --

19          A.  Well, she did ask me for the letter right away.  And we did verbal talking but then she spoke to the owner --

20

21          Q.   Well, ma'am -- and I appreciate that and if Mr. Schifalacqua has more questions for you, he'll have the opportunity to answer or ask them.

22          Mr. Schifalacqua [prosecutor]: Judge, I'm going to object to argument.  Why is she yelling at the witness?

23

24          The Court: Ms. Cleveland, I think we addressed this earlier.  This witness has -- is just testifying.  I haven't detected one thing that would cause you to have to get sharp with her at this time.

25

26          Ms. Cleveland: I apologize, Your Honor.

          The Court: And so, I would please ask that you work to adjust the demeanor

1     at this time.

2              Ms. Cleveland: Very well.

3
Transcript of Trial, June 17, 2008, Exhibit 16, p. 115.  Rudolpho contends that these exchanges
4
showed "manifest bias against the defense" on the part of the trial judge, and violated his federal
5
constitutional right to due process of law.  *See* Petition for Writ of Habeas Corpus, pp. 3o-3p.
6
         On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied this claim
7
without discussion.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32, p. 2 n.1.
8
         A defendant is entitled to a fair trial, free from judicial bias.  *In re Murchison*, 349 U.S. 133,
9
136 (1955).  Judges are presumed to be unbiased.  *See Schweiker v. McClure*, 456 U.S. 188, 195
10
(1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Judicial bias is shown in one of two ways:  by
11
demonstrating the judge's actual bias, or by showing that the judge had an incentive to be biased
12
sufficiently strong to overcome the presumption of judicial integrity (i.e., a substantial likelihood of
13
bias).  *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir.1994); *Fero v. Kerby*, 39 F.3d 1462, 1478-79
14
(10th Cir.1994).  The Supreme Court has explained that a showing of bias cannot be based merely
15
upon the tenor of a judge's remarks in the courtroom:
16
> [J]udicial remarks during the course of a trial that are critical or disapproving of, or
17
> even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or
> partiality challenge.  They may do so if they reveal an opinion that derives from an
18
> extrajudicial source; and they will do so if they reveal such a high degree of
> favoritism or antagonism as to make fair judgment impossible....  Not establishing
19
> bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance,
> and even anger, that are within the bounds of what imperfect men and women ...
20
> sometimes display.  A judge's ordinary efforts at courtroom administration -- even a
> stern and short-tempered judge's ordinary efforts at courtroom administration --
21
> remain immune.

22
*Liteky v. United States*, 510 U.S. 540, 555-56 (1994).
23
         In this case, there is no indication of actual bias, and the judge's comments regarding defense
24
counsel's demeanor do not suggest a substantial likelihood of bias.  There is no indication that the
25
judge's remarks originated from an extra-judicial source of bias; rather, the comments were plainly
26
responses to incidents that occurred during the trial.  "[O]pinions formed by the judge on the basis of

18

1    facts introduced or events occurring in the course of the current proceedings ... do not constitute a

2    basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that

3    would make fair judgment impossible." *Id*. at 555; *see also United States v. Wilkerson*, 208 F.3d

4    794, 797 (9th Cir.2000).  Moreover, the judge's comments did not reveal favoritism, or antagonism

5    toward the defense, but instead demonstrated, at most, mild frustration with Rudolpho's counsel.

6    Considered in the context of the trial as a whole, the judge's comments were isolated and trivial, and

7    had no impact on the fairness of the trial.  *See Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir.1995)

8    (denying habeas relief on petitioner's complaint that the trial judge lacked impartiality, was hostile

9    and sarcastic, and participated in questioning witnesses).

10          The court notes that, after jury selection and before any evidence was presented, the trial

11   judge instructed the jury: "I may ... find it necessary to admonish the lawyers and if I do, you should

12   not show any prejudice against a lawyer or a client because I have found it necessary to admonish

13   him or her."  Transcript of Jury Selection, Exhibit 14, p. 95.  Jurors are presumed to follow their

14   instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

15          Furthermore, the court notes that, in her closing argument, defense counsel commented, as

16   follows, on her demeanor during the trial:

17               Ladies and gentlemen I know I express perhaps some frustration.  I got a little
                 fired up during trial and I know the Court had to kind of bring me back to the extent
18               that it was disrespectful to the Court.  I apologize for that.  I do not however
                 apologize for vigorously defending my client.
19

20   Trial Transcript, Closing Arguments, June 19, 2008, Exhibit 19, pp. 16-17.

21          Rudolpho's federal constitutional right to due process of law was not violated by the

22   comments of the trial judge complained of by Rudolpho in Ground 1(VII).

23          The Nevada Supreme Court's summary denial of this claim was not contrary to, or an

24   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

25   the United States, and the state court's ruling was not based on an unreasonable determination of the

26   facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho does not show habeas

1   relief to be warranted.  The court will deny habeas corpus relief with respect to this claim.

2          Ground 1(IX)

3          In Ground 1(IX), Rudolpho claims that the sentence imposed upon him amounts to cruel and

4   unusual punishment, in violation of the federal constitution.  *See* Petition for Writ of Habeas Corpus,

5   pp. 3u-3w.

6          Rudolpho is serving two consecutive sentences of five to fifteen years in prison.  *See*

7   Amended Judgment of Conviction, Exhibit 38.  In his petition, Rudolpho characterizes his sentence

8   as three consecutive terms of five to fifteen years in prison.  *See* Petition for Writ of Habeas Corpus,

9   pp. 3u-3w.  Apparently, Rudolpho's argument was composed before the amended judgment of

10  conviction was entered, based on the Nevada Supreme Court's ruling on his direct appeal.  For this

11  reason, much of Rudolpho's argument regarding this claim is inaccurate.

12         On Rudolpho's direct appeal, the Nevada Supreme Court summarily denied this claim

13  without discussion.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32.

14         "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow

15  proportionality principle' that 'applies to noncapital sentences.'"  *Ewing v. California*, 538 U.S. 11,

16  20 (2003); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  In evaluating an Eighth

17  Amendment claim challenging a sentence involving a term of years in prison, "[a] gross

18  disproportionality principle" applies.  *Id*. at 72.  While the "precise contours" of the principle are

19  "unclear," it " reserves a constitutional violation for only the extraordinary case."  *Id*. at 77.  If a

20  comparison of the gravity of the offense with the harshness of the sentence does not raise an

21  inference of gross disproportionality, the court need not consider other factors.  *See Harmelin v.*

22  *Michigan*, 501 U.S. 957, 1005-06 (1991).  In assessing gross disproportionality, the court considers

23  not only the offenses on which the petitioner was sentenced, but also his prior criminal record.  *See*

24  *Ewing*, 538 U.S. at 29-30.

25         Rudolopho's offenses in this case were serious:  burglary and grand larceny, victimizing a

26  elderly man, involving theft of valuable items collected by the victim's deceased wife, and

1  committed by means of Rudolpho's exploitation of his position as a maintenance worker at an

2  apartment complex for senior citizens.  Moreover, Rudolpho's prior criminal record was extensive.

3  At sentencing, the trial judge characterized Rudolpho's criminal record as follows:

> The Court:  ... Mr. Rudolpho started out his criminal history back in 1975
> with a burglary conviction.  He had his probation revoked, he had his parole revoked
> and he expired his term.  In 1983, he had 16 counts of forgery, that he had forged
> checks which had been stolen from a residential burglary way before it was really
> popular to be doing identity theft.  And he was guilty of forgery and had five years
> Nevada Department of Corrections consecutive to the burglary case.
>
> In 1987, robbery with use of a deadly weapon.  He placed a gun on a counter
> of a business and demanded money.  He was guilty of robbery with use of a deadly
> weapon, he received eight years with a consecutive eight years.  And he expired his
> robbery sentence in prison.  His parole was revoked.
>
> 1994, it was just a simple petit larceny, got six months CCDC.  1996, another
> burglary, 48 to 120, given probation, got a DD.  1997, possession of another forged
> instrument, is given 24 to 60, probation, probation revoked, he got his term modified.
> And then in 2007, he's working at an apartment complex where there are senior
> citizens.  He's taking their property and selling it to the other senior citizens.

13  Transcript of Proceedings, Sentencing, August 7, 2008, Exhibit 23, p. 9.

14       Rudolpho's sentence is not grossly disproportional, considering his offenses and his prior

15  criminal record.  There is no Eighth Amendment violation.

16       The Nevada Supreme Court's summary denial of this claim was not contrary to, or an

17  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

18  the United States, and the state court's ruling was not based on an unreasonable determination of the

19  facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho does not show habeas

20  relief to be warranted.  The court will deny habeas corpus relief with respect to this claim.

21       Ground 1(X)

22       In the remaining portion of Ground 1(X), Rudolpho claims that the cumulative effect of

23  errors at his trial, other than alleged ineffective assistance of counsel, resulted in a violation of his

24  federal constitutional rights.  *See* Petition for Writ of Habeas Corpus, p. 3w; *see also* Order entered

25  January 7, 2013 (ECF No. 18).

26       In light of the court's analysis of Rudolpho's claims, other than his claims of ineffective

1    assistance of counsel, the only claims to which this cumulative error claim could apply are the

2    claims of prosecutorial misconduct in Ground 1(IV).  The court has considered, cumulatively,

3    Rudolpho's claims of prosecutorial misconduct in Ground 1(IV), and concludes that the alleged

4    prosecutorial misconduct did not so infect Rudolpho's trial with unfairness as to make his resulting

5    convictions a denial of his federal constitutional right to due process of law.  *See Parle v. Runnels*,

6    505 F.3d 922, 927 (9th Cir.2007), citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The

7    alleged prosecutorial misconduct -- considered cumulatively -- did not have a substantial and

8    injurious effect or influence on the jury's verdict.  *See id*., citing *Brecht v. Abrahamson*, 507 U.S.

9    619, 637 (1993).

10          The Nevada Supreme Court's denial of relief on a cumulative error theory was not contrary

11   to, or an unreasonable application of, clearly established federal law, as determined by the Supreme

12   Court of the United States, and the state court's ruling was not based on an unreasonable

13   determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho

14   does not show habeas relief to be warranted.  The court will deny habeas corpus relief with respect

15   to this claim.

16          Ground 2(H)(5)

17          In Ground 2(H)(5), Rudolpho claims that he received ineffective assistance of counsel.  *See*

18   Petition for Writ of Habeas Corpus, pp. 5e-5f.  Rudolpho claims, with little explanation, that his

19   counsel did not communicate sufficiently with him, did not afford him an opportunity to review

20   materials obtained in discovery, did not sufficiently investigate the case, did not interview potential

21   witnesses, did not call any expert witnesses to testify, and did not inform him of the sentence that he

22   could receive if convicted.  *See id*.

23          In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

24   prong test for analysis of claims of ineffective assistance of counsel:  the petitioner must

25   demonstrate (1) that the defense attorney's representation "fell below an objective standard of

26   reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that

1   "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

2   proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.  A court considering a

3   claim of ineffective assistance must apply a "strong presumption" that counsel's representation was

4   within the "wide range" of reasonable professional assistance. *Id.* at 689.  The petitioner's burden is

5   to show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

6   guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  And, to establish prejudice under

7   *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable

8   effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must be "so serious as to

9   deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

10          Where a state court has adjudicated a claim of ineffective assistance of counsel under

11  *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult.

12  *See Harrington*, 562 U.S. at 104-05.  In *Harrington*, the Supreme Court instructed:

13               The standards created by *Strickland* and § 2254(d) are both highly deferential,
             [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct.
14           2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is
             "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)].  The *Strickland*
15           standard is a general one, so the range of reasonable applications is substantial.  556
             U.S., at 123, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger
16           of equating unreasonableness under *Strickland* with unreasonableness under §
             2254(d).  When
17           § 2254(d) applies, the question is not whether counsel's actions were reasonable.
             The question is whether there is any reasonable argument that counsel satisfied
18           *Strickland's* deferential standard.

19
    *Harrington*, 562 U.S. at 105; *see also Cheney*, 614 F.3d at 994-95 (acknowledging double deference
20
    required with respect to state court adjudications of *Strickland* claims).
21
            The Nevada Supreme Court denied relief on this claim, ruling as follows:
22
             [A]ppellant claimed that counsel was ineffective for failing to investigate and for
23           failing to communicate prior to trial.  Appellant failed to support his claims with
             specific facts that, if true, entitled him to relief. *Hargrove v. State*, 100 Nev. 498,
24           502, 686 P.2d 222, 225 (1984).  Therefore, the district court did not err in denying
             these claims.
25
    Order of Affirmance, Exhibit 49, p. 3.
26
            This court agrees with the state court that Rudolpho's *Strickland* claim fails on account of his

failure to support the claim with specific facts.  With respect to Rudolpho's claim that his counsel did not communicate sufficiently with him, Rudolpho makes no showing of what information was not communicated, or what difference such communication would have made with respect to the outcome of the trial.  With respect to Rudolpho's claim that his counsel did not afford him an opportunity to examine materials obtained in discovery, he gives no indication what discovery materials he did not see, or how his inability to examine those materials affected the outcome of the trial.  With respect to his counsel's alleged insufficient investigation, Rudolpho does not make any showing what further investigation would have uncovered, or how such further investigation could have led to a better outcome at trial.  Regarding his counsel's alleged failure to interview potential witnesses, Rudolpho does not identify the witnesses his counsel should have interviewed, does not make any showing how those unnamed witnesses would have testified, and does not explain how their testimony would have supported his defense.  Regarding his counsel's failure to call any expert witnesses to testify, Rudolpho argues that an expert "could have been used to refute the evidence presented at trial regarding the alleged value of the items which was used to enhance his alleged crime based upon meeting a threshold amount (over $250.00)" (Reply (ECF No. 20), pp. 5-6), but he does not identify any such expert, and does no more than speculate regarding what an expert might have concluded regarding the value of the stolen property.  Finally, regarding his claim that his counsel did not inform him of the sentence that he could receive if convicted, Rudolpho does not make any showing that he would have done anything different with regard to plea negotiations if he had more information regarding his potential sentence.  In short, the court finds Rudolpho's claims of ineffective assistance of counsel to be wholly *pro forma* and unsupported.

The Nevada Supreme Court's denial of relief on Rudolpho's claims of ineffective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and the state court's ruling was not based on an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Rudolpho does not show habeas relief to be warranted.  The court will deny habeas

1    corpus relief with respect to this claim.

2           Ground 2(J)

3           In Ground 2(J), Rudolpho claims that his federal constitutional rights were violated because

4    he did not receive notice that the State would seek to have him sentenced as an habitual criminal.

5    *See* Petition for Writ of Habeas Corpus, pp. 5g-5h.

6

7           The Nevada Supreme Court denied this claim, on Rudolpho's direct appeal, with no

8    explanation.  *See* Order Affirming in Part and Reversing in Part, Exhibit 32.

9           The Sixth Amendment guarantees a criminal defendant the right to be informed of the nature

10   and cause of the charges made against him so as to permit adequate preparation of a defense.  *See*

11   *In re Oliver*, 333 U.S. 257, 273 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Gautt v. Lewis*,

12   489 F.3d 993, 1002-04 (9th Cir.2007).

13          Rudolpho's claim is belied by the record.  The information plainly provided adequate notice

14   to Rudolpho that the State was seeking habitual criminal enhancement.  *See* Information, Exhibit 4,

15   pp. 4-5.  At Rudolpho's arraignment, the court asked Rudolpho if he knew the charges against him,

16   and whether he could read, write, and understand the English language, and he answered "yes."

17   *See* Transcript of Hearing, January 10, 2008, Exhibit 5, p. 3.

18          The Nevada Supreme Court's summary denial of this claim was not contrary to, or an

19   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

20   the United States, and was not based on an unreasonable determination of the facts in light of the

21   evidence presented.  *See id*.  Rudolpho does not show habeas relief to be warranted.  The court will

22   deny habeas corpus relief with respect to this claim.

23   Certificate of Appealability

24          The standard for issuance of a certificate of appealability calls for a "substantial showing

25   of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court interpreted

26   28 U.S.C. §2253(c) as follows:

1

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

2

3

4 *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

5 (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

6 537 U.S. 322 (2003).  The Court stated in that case:

7

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.  As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

8

9

10

11

12 *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

13       The court has considered Rudolpho's claims, with respect to whether they satisfy the

14 standard for issuance of a certificate of appeal, and the court determines that none does.

15       **IT IS THEREFORE ORDERED** that petitioner Samuel Rudolpho's Petition for Writ of

16 Habeas Corpus (ECF No. 6) is **DENIED**.

17       **IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

18       **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT**

19 **ACCORDINGLY.**

20

21       Dated this 15th day of June, 2015.

22

23                              _____

                             UNITED STATES DISTRICT JUDGE

24

25

26